**Bunyan S. WILSON, Jr., Trustee in Bankruptcy for Franklin Wholesale Company, Plaintiff,**

v.

**GRAYSON MILLING COMPANY, a corporation, Defendant.**

**No. 368.**

United States District Court
E. D. Kentucky, Catlettsburg Division.

June 8, 1956.

Caldwell & Robinson, Ashland, Ky., for plaintiff.

W. H. Dysard, Ashland, Ky., for defendant.

SWINFORD, District Judge.

This action is grounded on Section 60, sub. b, of the Bankruptcy Act, 11 U.S. C.A. § 96, sub. b, to recover the sum of $764.65 with the interest from August 20, 1954, at the rate of 6 per cent per annum. The plaintiff is the trustee in bankruptcy for the Franklin Wholesale Company and alleges that the principal of the amount for which he sues was paid to the defendant in satisfaction of an account which the bankrupt owed to the defendant in the sum of $724 and for the additional sum of $40.65, accumulated costs in a court proceeding in the state court. It is alleged that the sum was paid as a result of an attachment suit and in order to satisfy the defendant and to have the attachment suit dismissed. It is set forth in the complaint that the amount paid to the defendant was within four months preceding August 20, 1954, the date on which the Franklin Wholesale Company was adjudged a bankrupt and by reason thereof the defendant obtained a preference over other creditors to the extent of the amount of money it received.

The case is before the court on the plaintiff's motion for summary judgment. The record is complete and reveals the following facts. The Franklin Wholesale Company was adjudged a bankrupt on August 20, 1954. At that time it had outstanding indebtedness of unsecured claims of approximately nineteen thousand dollars. Prior to its adjudication in bankruptcy it was indebted to the defendant for goods it had purchased in the sum of $724. The defendant knew of the precarious financial condition of the bankrupt and on May 7, 1954, filed a civil action in the state court to recover the amount of the indebtedness. In that action it sought an attachment and alleged that the defendant (the bankrupt here) had no property in this state subject to execution or not enough thereof to satisfy the plaintiff's (defendant here) demands.

Baxter Arnett, an attorney of Ashland, Kentucky, was one of the stockholders of the Franklin Wholesale Company and represented it in the state court proceeding of May 7, 1954. In order to discharge the attachment and to protect the company he sought to settle the state court case. On May 21, 1954, the Franklin Wholesale Company gave a check to him in the amount of $200; on June 12, 1954, it gave him another check in the amount of $550; on June 17, 1954, it gave to him another check in the amount of $14.65. The total of the three sums given between May 21 and June 17 is $764.65, the exact amount of the indebtedness and court costs representing the claim against the bankrupt of the defendant, the Grayson Milling Company. On June 19, 1954, Mr. Arnett gave a check payable to the order of Thomas Theobald, Jr., attorney, in the amount of $724 and endorsed, "In full claim against Franklin Whse. Co. Inc."

The checks from the Franklin Wholesale Company to Mr. Arnett and the stubs from which the checks were taken bore endorsements and memoranda which, according to the witnesses, clearly indicate that the money was paid to Mr. Arnett for the sole purpose of satisfying the claim of the Grayson Milling Company. The "Satisfaction of Judgment", shown by a certified transcript of the record of the proceedings in the state court, establishes without question that the money paid by Mr. Arnett to Mr. Theobald was understood at the time to be paid by the defendant and not as the money of Mr. Arnett. It recites that "This day came the defendant and paid to the plaintiff * * *", etc., and further on "* * * the defendant having paid and satisfied the judgment * * *", etc.

It would serve no purpose to belabor the matter of evidence further. I feel that the plaintiff has established by a preponderance of evidence that the bankrupt paid through Mr. Arnett the amount of the claim of the defendant here and that the assets of the bankrupt were depleted thereby. This preference given to the defendant should not be permitted to stand in this bankruptcy proceeding which is essentially equitable. Since the payment was made within the four months period, as provided by the statute, it should be set aside and the defendant required to pay the amount of $724 which it received to the trustee in bankruptcy.

The defendant cites the case of Olmstead v. Massachusetts Trust Company, D.C., 11 F.2d 410, in support of its position that a payment by Baxter Arnett of the defendant's claim, from his personal account, defeats the idea of a preference within the meaning of the law. The facts of the Olmstead case are so entirely different that it is of little value as a precedent here. In that case one of the partners of an insolvent shoe company delayed action against the company by a creditor by executing to the creditor his personal note which he agreed to retire at the rate of $1,000 a week until paid. He proceeded to carry out his agreement until his death before the entire amount was satisfied. It was shown that the shoe company had shipped to this partner a large supply of shoes and that on the same date he executed his personal note to the

bank he was indebted to the insolvent shoe company in an amount in excess of the indebtedness to the bank which he had assumed. All of these facts were known to the bank. The shoe company later went into bankruptcy and the transaction, being within the four months period, was attacked as a preference. The case turned upon the matter of evidence and the court held that there was nothing in the record to justify it in holding that the purpose in shipping the large amount of shoes just before liquidation was to enable the surety to realize on them and to pay the proceeds in satisfaction of the indebtedness which he had personally assumed. The court stated that to accept such a fact would be to hold the testimony of the banker as intentionally false which it declined to do. It stated further that, "While there is no doubt that the court will look behind the appearance of a transaction to its real character, it seems to me that the evidence fails to establish the plaintiff's contention."

Without going into a detailed statement of the facts the same can be said of Miller v. Fisk Tire Co., D.C., 11 F.2d 301. The court based its finding of no preference on the facts established to the effect that the bankrupt's estate had not been diminished by the payments made to the alleged preferred creditor but were purely a matter of personal obligation. The district judge in his opinion emphasized the fact that there can be no preferential transfer without a depletion of the bankrupt's estate, Collier on Bankruptcy (13th Ed.) vol. 2, p. 1276; 7 C.J. 164; 8 C.J.S., Bankruptcy, § 220, and that the burden of showing that the bankrupt's estate was diminished by the payment to the defendant was upon the trustee. Lowell v. Brown, D.C., 280 F. 193. As I have pointed out, the court held in the Miller case that the evidence failed to show that the check given to the creditor was paid out of the funds of the bankrupt's estate.

I do not feel that the other cases cited by counsel for the defendant are in point.

It is the judgment of the court that the prayer of the plaintiff's complaint should be granted and that the plaintiff should recover of the defendant the sum of $724 with interest thereon at the rate of six per cent per annum from June 23, 1955, the date of the filing of the complaint. The amount paid to the clerk of the state court for court costs, not having been paid to the defendant, cannot be recovered in this proceeding.

Findings of fact, conclusions of law and judgment are this day filed.